IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JONATHAN W. CRAIN                                                                                    PLAINTIFF

V.                                                                              CAUSE NO. 3:17-CV-868-SA-RP

METROPOLITAN SECURITY SERVICES, INC.                                              DEFENDANT

MEMORANDUM OPINION

Jonathan Crain, an African American male and a Court Security Officer in the United States District Court for the Southern District of Mississippi, filed his Complaint [1] on October 30, 2017. Crain alleges that the Defendant, Metropolitan Security Service, Inc., violated Title VII of the Civil Rights Act when it did not select him for a District Supervisor position. Now before the Court is the Defendant's Motion for Summary Judgment [77], requesting summary judgment in its favor on all of Crain's claims. The issues are fully briefed and ripe for review.

*Factual and Procedural Background*

The United States Marshals Service contracts with private security companies to provide security at federal courthouses. In 2015, the Defendant, Metropolitan Security Services doing business under the name "Walden Security," entered into a contract with the United States Marshal Service to provide private security services to the Federal Courthouses in the Fifth Circuit, including the Southern District of Mississippi. At that time, Jonathan Crain was employed as the Senior Lead Court Security Office at the federal courthouse in Jackson, Mississippi, working directly under the District Supervisor, Galen Knupp.

In November, District Supervisor Galen Knupp notified Walden Security that he planned to retire. Knupp recommended Prentiss Parker to assume his role as District Supervisor. Based on Knupp's recommendation, Walden Security offered Parker the position, and Parker declined.

Consequently, Walden Security posted the open position on its website on November 13, 2015. Crain was interested in the District Supervisor position, having served in the position on a temporary basis from time to time when Knupp was absent.

By November 20, 2015, Walden Security received thirteen applications for the position and although Crain was aware of the position, he did not submit an application at that point. According to Crain, he went to the website but was unable to access the application. Crain did place several phone calls to Walden Security's Human Resources Department to inquire about the application process. On November 24, 2015, Walden Security offered the District Supervisor position to Steve Renfroe, a white male. Renfroe accepted the offer and appeared for work at the Jackson Courthouse on December 1, 2015. On that day, Renfroe personally informed Crain that he, Renfroe, was the new District Supervisor. Crain attempted to submit his application on December 3, 2015, days after the position had already been offered to and accepted by Steve Renfroe. In his deposition, Crain testified that he never completed an application for the position. According to Crain, when he attempted to apply for the position, the online system would not allow him to submit his application. Crain also testified that he tried to submit his application despite Renfroe's hiring because the position was still marked "open" on the website.

Crain alleges that Walden Security failed to promote him because of his race. Crain also alleges that Walden Security hired a white person instead of him, and thwarted his attempts to apply, because he is African American. Crain filed his Complaint [1] against Walden Security and the Attorney General of the United States. This Court granted the Government's Motion to Dismiss [37] on November 29, 2018, making Walden Security the sole Defendant. Now before the Court is Walden Security's Motion for Summary Judgment [77]. Walden Security argues that there are

no genuine disputes of material fact, and that Crain failed to establish a *prima facie* case of racial discrimination under Title VII.

*Summary Judgment Standard*

Summary Judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Analysis and Discussion*

i.   *Failure to Apply*

Walden Security argues that Crain cannot establish a *prima facie* case because he never applied for the position. In addition, Walden Security argues that even if Crain could establish a *prima facie* case, he cannot demonstrate that he was qualified for the position. Title VII provides:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1). "The purposes of Title VII are to achieve equality of employment opportunity and to make persons whole for injuries suffered on account of unlawful employment discrimination." *Floca v. Homcare Health Servs., Inc.*, 845 F.2d 108, 111 (5th Cir. 1988) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975)); *see also University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013). "Cases of discrimination based on circumstantial evidence are subject to the *McDonnell Douglas* burden-shifting analysis." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004); *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Here, Crain alleges that the Defendant engaged in racial discrimination when it failed to promote him to the vacant District Supervisor position. Under *McDonnell Douglas*, Crain first bears the burden of establishing a *prima facie* case of discrimination. *Id.* "An employee presents a *prima facie* case of discrimination in a failure to promote case by demonstrating four elements: (1) that the employee is a member of a protected class; (2) that he sought and was qualified for the

position; (3) that he was rejected for the position; and (4) that the employer continued to seek or promoted applicants with the plaintiff's qualifications." *See Davis*, 383 F.3d at 317.

If a plaintiff establishes a presumption of discrimination by establishing a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The burden on the employer "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

It is undisputed that Crain is a member of a protected class. *See* 42 U.S.C. § 2000e-2(a)(1) (outlining race, among other characteristics, as a protected category under Title VII of the Civil Rights Act). The core issue in this dispute is whether Crain applied for the vacant District Supervisor position as contemplated by the second element of his *prima facie* case. *See Davis*, 383 F.3d at 317.

> The question of whether a plaintiff in the Title VII context actually applied for a particular position goes to the question of whether the plaintiff has proffered a *prima facie* case. The second *McDonnell Douglas* prong . . . requires the position to actually be sought—without that, normally a plaintiff cannot be denied employment."

*Kolpakchi v. Principi*, 113 Fed. Appx. 633, 636 (5th Cir. 2004).

The Defendant contends that it never received an application from Crain. According to Crain's deposition, he visited the company's website sometime after November 20. Crain asserts that when he visited the website, he could see the listing but the link would not allow him access to the application. Sometime later, Crain contacted the Contract Manager and the Director of Human Resources regarding the link. Renfroe informed Crain that he, Renfroe, was the new District Supervisor on December 1. Crain testified that on December 2, he was able to access the application and begin entering data. However, Crain further alleges that once he returned to the application on December 3 to upload his resume, the job was no longer listed.

It is undisputed that Crain was aware of the posting at the same time thirteen other individuals submitted applications. It is also undisputed that Crain never submitted a completed application. Although Crain alleges that the Defendant intentionally thwarted his ability to apply for the position because of his race, he offers no facts or evidence to support this conclusory allegation. More specifically, Crain offers no evidence that could tend to prove that the Defendant made a targeted effort to alter the application link specifically for him or to otherwise prevent him from submitting an application because of his race. *See Alvarado*, 492 F.3d at 611; *Rachid*, 376 F.3d at 312.

Federal jurisprudence is consistent in its requirement for formal application.[1] *See Haynes v. Pennzoil Company*, 207 F.3d 296, 301 (5th Cir. 2000) (holding that the plaintiff's failure to apply to the open legal position in the defendant's legal department defeated his effort to establish

---

[1] There is an exception to this general rule: "failure to apply for the position does not bar a claim if the plaintiff can show that such an application would have been a futile gesture." *Id.*; *See Teamsters v. United States*, 431 U.S. 324, 363-66, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977); *Claiborne v. Illinois Cent. R. R.*, 583 F.2d 143, 150 (5th Cir. 1978). Making such a claim usually requires a showing that the applicant for the promotion was deterred by a known and consistently enforced policy of discrimination. *Id*. Crain offers no argument or evidence as to this exception.

a *prima facie* failure to promote case.); *Frensley v. North Mississippi Medical Center, Inc.*, 2010 WL 3655860 at *5 (ND Miss. Sep. 9, 2010) (holding that because the plaintiff failed to apply for the SICU nurse-manager position, summary judgment was proper on her discrimination claim.); *See also Spight v. Tidwell Industries*, 551 F. Supp. 123 (ND Miss. Nov. 23, 1982) (finding that an employee who failed to apply for promotion to foreman failed to meet burden of proving his application would have been futile); *Kolpakchi*, 113 Fed. Appx. at 638 (holding that because the plaintiff failed to apply for the desired position, she cannot present a prima facie case of discrimination).

Even if Crain was able to demonstrate that he applied for the position, he failed to bring forth any evidence that Walden Security prevented him from applying. To the extent that the Crain argues that Walden Security manipulated the application and hiring process to make sure that a particular person was in the position, as this Court noted previously, "pre-selection, in and of itself, does not establish pretext *unless the preselection was motivated by discriminatory animus.*" See *Pree v. Washington Cty. Bd. of Supervisors*, No. 4:16-CV-122-SA, 2018 WL 522776, at *5 (N.D. Miss. Jan. 23, 2018) (citing *Rowe v. Jewell*, 88 F. Supp. 3d 647, 665 (E.D. La. 2015); *Walsdorf v. Bd. of Comm'rs for the E. Jefferson Levee Dist.*, 857 F.2d 1047, 1051 (5th Cir. 1988); *Hiner v. McHugh*, 546 Fed. Appx. 401, 407 (5th Cir. 2013)).

    ii.    *Statistics of Racial Disparities in Employees*

During discovery, the Plaintiff made a request to the Defendant to produce their EEO-1 forms which document the gender and racial statistics of its employees. The Defendant claimed at the time that it could not locate the documents. When asked "what kind of search have you made for these EEO-1 forms", the Defendant responded that "they checked former VP Carol Sullivan's files and they have not been located." [81-5]. After the summary judgment briefing was complete

and on the eve of trial, the Defendant produced the previously requested documents to the Plaintiff on March 23, 2019. At the Plaintiff's request, Court entered an order [93] continuing trial and ordering additional briefing regarding the newly produced statistical evidence.

The EEO-1 forms include all levels of employment at Metropolitan Security, the racial make-up of the employees, and the gender of the employees. The Plaintiff claims, without objection from the Defendant, that the position sought by Crain falls within "First/Mid Officials & Managers." Therefore, the Court focuses on those statistics. In 2015, the Defendant had 63 employees within the First/Mid Officials & Managers' level; only 7 were African American. In 2016, the Defendant had 91 employees within the First/Mid Officials & Managers' level; only 10 were African American. In 2017, the Defendant had 103 employees within the First/Mid Officials & Managers' level; only 8 were African American. The Plaintiff argues that these statistics are proof of discriminatory intent.

The Supreme Court has endorsed the use of statistics as an "important source of proof in employment discrimination cases." *Hazelwood School Dist. v. U.S.*, 433 U.S. 299, 307, 97 S. Ct. 2736 (1977). Evidence of long-lasting and gross disparity between the composition of a work force and that of the general population thus may be significant even though there is no requirement that the work force mirror the general population. *Id* at 340, 97 S. Ct., 2736 n.20. The Court further explained that "it is ordinarily to be expected that nondiscriminatory hiring practices will in time result in a work force more or less representative of the racial and ethnic composition of the population in the community from which employees are hired." *Id*.

However, the Fifth Circuit cautions ". . . that statistics are not irrefutable; they come in infinite variety and, like any other kind of evidence, they may be rebutted. In short, their usefulness depends on all of the surrounding facts and circumstances." *Hester*, 497 F.2d at 1379; *see also*

*E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1184 (5th Cir. 1996) (holding that the probative value of statistical evidence ultimately depends on all the surrounding facts, circumstances, and other evidence of discrimination.).

At first blush, these statistics indicate a racial disparity in the upper levels of this organization. Even so, these statistics alone do not supplant the Plaintiff's burden to demonstrate that he applied for the position. Although the Plaintiff makes the bare assertion that the Defendant hindered his ability to apply, he does not point to any facts to support this bare assertion. Without more, there is nothing to connect these statistics to the Plaintiff's claim. Finally, the Plaintiff has not brought forth any facts that could tend to support a conclusion that the Plaintiff was "deterred by a known and consistently enforced policy of discrimination." *See Teamsters*, 431 U.S. at 363-66, 97 S. Ct. 1843; *Claiborne*, 583 F.2d at 150. To the contrary, the record reflects that 13 other applicants were able to successfully submit applications, apparently without issue. Without additional evidence and proof, the statistics alone are not sufficient to establish a prima facie case of discrimination.

*Conclusion*

For all the reasons fully explained above, Walden Security's Motion for Summary Judgment [77] is GRANTED.

SO ORDERED, this the 17th day of September, 2019.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE